**SO ORDERED.**

**SIGNED March 20, 2007.**



_____
ROBERT SUMMERHAYS
UNITED STATES BANKRUPTCY JUDGE

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA

IN RE:

DANIEL JOSEPH
DOROTHY JOSEPH                                                      CASE NO. 06-50655

   Debtors                                                           CHAPTER 13

-----------------------------------------------------------------------------------------------------------------
**REASONS FOR DECISION**
-----------------------------------------------------------------------------------------------------------------

      The present matter comes before the court as an objection by the debtors, Daniel and Dorothy Joseph (the "Debtors"), to a proof of claim filed by Wells Fargo Financial Acceptance, Inc., with respect to a 2003 Ford Focus purchased by the Debtors. Wells Fargo holds the note on the car, and has filed a proof of claim for the entire remaining balance of the note as a secured claim. The sole question presented to this court re-treads familiar ground: the question of what constitutes "personal use" for purposes of the so-called "hanging paragraph" at the end of 11 U.S.C. §1325(a). This question is significant because, if the Debtors' vehicle was acquired for personal use, the hanging paragraph precludes the Debtors from reducing (or "cramming down") the value of Wells

Fargo's secured claim to the value of the vehicle.[1] Wells Fargo contends that the Debtors acquired the 2003 Ford Focus for personal use. The Debtors contend that the Ford Focus was not acquired for personal use because Ms. Joseph uses the vehicle as transportation to her place of employment and, hence, the hanging paragraph (and the prohibition on cramdown) is inapplicable.

After considering the pleadings, the arguments of counsel, and the evidence presented during the hearing, the court entered a minute order on November 29, 2006, overruling the Debtors' objection to Wells Fargo's claim and denying confirmation. The following are the court's findings of fact and conclusions of law with respect to the court's ruling.

## JURISDICTION

This case has been referred to this court by the Standing Order of Reference entered in this district which is set forth as Rule 83.4.1 of the Local Rules of the United States District Court for the Western District of Louisiana. No party in interest has requested a withdrawal of the reference. The court finds that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). These Reasons for Decision constitute the court's findings of fact and conclusions of law pursuant to Rule 7052, Federal Rules of Bankruptcy Procedure.

## FACTS

On March 11, 2004, the Debtors purchased a 2003 Ford Focus and executed a retail installment contract wherein the Debtors financed $10,039.99 of the $11,039.99 purchase price. During the hearing on this matter, Ms. Joseph testified that she purchased the Ford Focus for

---

[1] It is not disputed that the Debtors' vehicle was purchased within the 910-day period preceding the filing of their petition, or that Wells Fargo holds a purchase money security interest in the vehicle.

transportation to her place of employment, which is five miles from her home in St. Martinsville, Louisiana. Prior to purchasing the Ford Focus, Ms. Joseph relied on friends and family for transportation to work. Ms. Joseph further testified that she used the Ford Focus for errands, although the vehicle was primarily used to travel to work. However, Ms. Joseph does not use the Ford Focus at work, nor does she use the car to carry out any of her work-related duties. The Debtors also have not claimed any deductions related to the Ford Focus as business expenses on their federal tax returns.

The Debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code on August 21, 2006 – within the 910-day period after they purchased the Ford Focus. Wells Fargo (the holder of the note on the Debtors' Ford Focus) filed a timely proof of claim asserting a secured claim of $11,004.63, which represented the entire balance of the loan. The Debtors then timely objected to Wells Fargo's proof of claim.

## DISCUSSION

The central issue before the court is whether the Debtors acquired the subject vehicle for "personal use" within the meaning of the hanging paragraph. If so, the plan must provide for payment of the entire balance of Wells Fargo's claim; the Debtors cannot "cram down" Wells Forgo's secured claim to the value of the car. The relevant provisions in § 1325(a)(5) state:

> "(a) Except as provided in subsection (b), the court shall confirm a plan if-
> ....
> (5) with respect to each allowed secured claim provided for by the plan-
> ....
> (B)(I) the plan provides that-
> ....
> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim····
> ··· or
> (C) the debtor surrenders the property securing such claim to such holder ···"

Page 3

Prior to the enactment of BAPCPA, the Bankruptcy Code allowed a chapter 13 debtor to "bifurcate" a secured claim by reducing the value of the secured claim to the value of the collateral securing the claim under §§ 506(a), 1322(b)(2), and 1325(a)(5)(B), and by treating the remainder of the claim as a general unsecured claim – a process often referred to as a "cramdown" or "cramming down" the secured claim.[2] BAPCPA amended § 1325(a)(5) by adding an un-numbered, "hanging paragraph" to the end of §1325(a) that eliminates the power to bifurcate and cram down certain types of secured claims:

> For purposes of paragraph (5)[treatment of secured claims], section 506 [providing for bifurcation of under-secured claims] shall not apply . . . if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle . . . **acquired for the personal use of the debtor,** . . . .

(emphasis added). This provision is triggered only if the vehicle was acquired for personal use. Neither the statute nor the legislative history of BAPCPA provide any definition or guidance for determining whether a vehicle was acquired for personal use.

Courts have been divided on the meaning of personal use in the context of the hanging paragraph. In *In re Johnson,* 350 B.R. 712 (Bankr. W.D. La. 2006), and *In re Hill*, 352 B.R. 69 (Bankr. W.D. La. 2006) (Schiff, J.), the court ruled that the debtors' vehicles were not acquired for "personal use" based on evidence that the debtors used their vehicles for transportation to their place of employment. Instead, the court ruled that the vehicles did not fall within the hanging paragraph because the vehicles allowed the debtors to "make a significant contribution to the gross income of

---

[2] Even prior to BAPCPA, there were limitations on the power to modify certain secured claims in a chapter 13 plan. For example, 11 U.S.C. § 1322(b)(2) prohibits a chapter 13 plan from modifying "a claim secured only by a security interest in real property that is the debtor's principal residence."

the family unit." *Johnson*, 350 B.R. 712.

Following *Johnson*, other courts have similarly grappled with the hanging paragraph and the meaning of "personal use." Like *Johnson*, the consensus of these decisions is that "personal use" means a *non-business* use. *See, e.g., In re Lowder*, 2006 WL 1794737 (Bankr. D. Kan. June 28, 2006); *In re White*, 352 B.R. 633 (Bankr. E.D. La. 2006); *In re Solis*, 356 B.R. 398 (Bankr. S.D. Tex. 2006); *In re Wilson*, 2006 WL 3512921 (Bankr. D. Kan. Dec. 5, 2006). In *Solis*, the court explained that personal (or non-business) use is a use that "benefits the debtor(s) such as transportation that satisfies personal wants (such as recreation), transportation that satisfies personal needs (such as shopping or seeking medical attention or other errands), and transportation that satisfies family and other personal obligations, whether legal or moral." 356 B.R. at 410. In contrast, a vehicle that is used for a business or "profit-making motive" falls outside the scope of the hanging paragraph. *Id*.

These courts, however, almost uniformly agree that use of a vehicle to travel to and from a debtor's place of employment is a *personal* use of the vehicle, not a business or profit-making use. *See, e.g., Lowder*, 2006 WL 1794737 at *4 ; *White*, 352 B.R. at 641; *Solis*, 356 B.R. at 410; *Wilson*, 2006 WL 3512921 at *3. For example, the debtor in *Lowder*, as in the present case, used a car for transportation to and from work, but did not use the car to carry out work-related responsibilities once she arrived at work. The *Lowder* court looked to the Fourth Circuit's discussion of personal use in the context of redemption under 11 U.S.C. §722 in *Cypher Chiropractic Center v. Runski*, 102 F.3d 744 (4th Cir. 1996). Based on *Runski*, the *Lowder* court concluded that the hanging paragraph does not apply if the vehicle in question was acquired for "business purposes," and that "[m]erely acquiring vehicle for [the debtor's] own use, with one of the uses contemplated being to drive to and

from work, is not for 'business' purposes; it is for personal use." 2006 WL 1794737 at *4[3].

After careful consideration, the court agrees with the reasoning of *Solis, Lowder*, *White*, and *Wilson* as to the meaning of "personal use" in the context of the hanging paragraph. Transportation to and from work is a personal use in the sense that it satisfies the debtor's personal needs and obligations – namely, the need for a reliable means for the debtor to commute to his or her place of employment. The court recognizes that work transportation has a monetary value in the sense that it allows the debtor to maintain a job (especially where there is no reliable public transportation), and that the income from the debtor's job may provide monetary benefits to the debtor and the debtor's family. However, these benefits are still personal to the debtor and the debtor's family. Any other reading would essentially eradicate the distinction between personal and business use.[4]

---

[3] *White* similarly held that transportation to and from work amounted to personal use:

> This vehicle is nothing other than one used for Debtor's personal benefit. Based on Debtor's stipulations, Debtor acquired her vehicle for both personal use and for transportation to and from work. Given that she did not use the vehicle for business after she arrived at her employment, received no reimbursements from her employer for its use, and deducted no expenses from her income for tax purposes, the Court cannot conclude that the vehicle is a business asset. At the time of purchase, Debtor even indicated on the retail installment contract that the vehicle was being acquired for personal use. **Based on Debtor's overall use of the vehicle and the entire percentage of miles driven, its primary use was for the benefit of Debtor personally**.

*White*, 352 B.R. at 641 (emphasis added).

[4] In other cases, debtors have argued that the use of the term "personal" in the hanging paragraph reflects Congress' intent to exclude vehicles used for family or household purposes from the effect of the hanging paragraph. Since the income from the debtor's job benefits the debtor's family or household, these debtors argue that work transportation is not a "personal" use subject to the hanging paragraph. This argument is based on the fact that the phrase "personal, family, or household use" is used in other parts of the Bankruptcy Code, so, according to this argument, the omission of the phrase "family or household" use in the hanging paragraph must reflect an intent to exclude family or household use from that provision. The court disagrees. Personal use invariably overlaps with family or household use. In most cases, there will be no

In order to establish that a vehicle is used for a "business" or "profit-making" purpose, a debtor must show that the vehicle is used to perform the functions of a business or a trade. In other words, does the debtor use the vehicle to carry out his or her job duties once the debtor arrives at work? There are many factors that are relevant to this determination, including the nature of the debtor's work, how the debtor's vehicle is used to perform the debtor's job duties, whether or not the debtor's employer requires the debtor to use his or her vehicle to perform the debtor's job-related duties, whether the debtor's employer reimburses the debtor for mileage, and whether or not the debtor claims any vehicle-related expenses as business expenses on the debtor's tax returns. The court will also consider the contents of the retail installment contract executed by the debtor. The contract signed by the debtor typically indicates whether the debtor is acquiring the vehicle for personal or business use. *See, e.g., White,* 352 B.R. at 641 (noting that "at the time of purchase, Debtor even indicated on the retail installment contract that the vehicle was being acquired for personal use.") If the debtor's contract indicates that the debtor acquired the vehicle for personal use, this factor will weigh heavily in favor of a finding that the vehicle was acquired for personal use. However, this fact alone is not dispositive, and must be considered in light of the totality of circumstances. *See Wilson,* 2006 WL 3512921 at *3-4 (fact that the sales contract signed by the debtor indicated that the purchase was for personal use, "while not conclusive of the Debtor's intent at the time of acquisition," supports a finding that the vehicle was acquired for personal use).

---

distinction. Accordingly, the omission of the phrase "family or household" use does not change this court's conclusion that transportation to and from work constitutes personal use, even if the debtor's employment benefits the debtor's family or household. *See Solis*, 356 B.R. at 409-410 ("'Personal' use and 'family or household' use are not different or mutually exclusive. The chapter 13 debtor is always a person, and when the debtor has a family it would be virtually impossible to distinguish 'family' use from 'personal' use.")

Finally, because most vehicles are used for a mixture of business and personal use, the court will consider the "totality of circumstances" in determining the *predominate* use of the vehicle. The court recognizes that the hanging paragraph does not provide any standards for dealing with "mixed use" vehicles. As Judge Steen noted in *Solis,* "there is no guidance in the statute concerning what percentage of business use (less than 100%) would disqualify the vehicle as a 910 Vehicle." 356 B.R. at 409 ("The words 'solely', 'exclusively', 'mostly', 'primarily', 'partially' or any other type of quantitative requirement do not appear in the hanging paragraph in this context, either.") In this court's view, the determination should turn on the predominate use of the vehicle. If the evidence shows that the business use of the vehicle predominates – even if the debtor uses the vehicle for personal purposes to a lesser extent – then the hanging paragraph does not apply. The factors relevant to the "predominate" use of the vehicle include the nature and extent of any personal use of the vehicle, and the relative number of miles that the vehicle is driven for personal versus business uses.[5]

Turning to the present case, Ms. Joseph testified that she acquired her Ford Focus primarily as transportation to her place of employment, but that she does not use her car once she arrives at work. In other words, she does not use the car as part of a business or to carry out the functions of

---

[5] In *Solis*, the court noted a possible exception in cases where the debtor could establish the absence of any alternative transportation to and from work. 356 B.R. at 410. This court respectfully declines to recognize any such an exception. As explained above, the focus of the court's inquiry is whether the vehicle is used for a business purpose. The exception suggested in *Solis* would open up an entirely new line of inquiry into the extent of public transportation in a given location, the lack of alternative forms of transportation, the rural versus urban nature of the debtor's location, and other factors which, in this court's view, have little to do with the ultimate question that must be answered by the court: is the vehicle used to perform the functions of a business or a trade? More importantly, the court finds no support in the statute for this exception. As always, the starting point for applying a statute is the statutory language itself. *Toib v. Radloff*, 501 U.S. 157 (1991); *Pennsylvania Dept. Of Public Welfare v. Davenport*, 495 U.S. 552 (1990); *United States v. Ron Pair Enters., Inc*., 489 U.S. 235 (1989). Here, the text of the statute does not support the exception suggested by *Solis*.

her job. She further testified that she does not use her vehicle at work, nor does she claim any deductions for the vehicle as business expenses. Considering all the facts and the totality of circumstances, the court concludes that the Debtors' 2003 Ford Focus was acquired for the personal use of the Ms. Joseph. Accordingly, the hanging paragraph precludes the Debtors' proposed treatment of Wells Fargo's claim.

## CONCLUSION

For the foregoing reasons, the Court overrules the Debtors' objection to Wells Fargo's proof of claim. The minute entry containing the court's order in this regard was entered on November 29, 2006.

###